IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AILEPATA LUAFAU, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>AFFILIATED COMPUTER SERVICES, INC.; ACS EDUCATION SERVICES, INC; and DOES ONE THROUGH TWENTY-FIVE, inclusive,<br><br>    Defendants.<br>_____/ | No. C 06-0347 CW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO STAY LITIGATION AND TO COMPEL ARBITRATION, DENYING DEFENDANTS' MOTION TO TRANSFER VENUE, AND GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT |

    Defendants Affiliated Computer Services, Inc. (ACS) and ACS Education Services, Inc. move to stay this litigation and to compel arbitration.  In a separate motion, Defendants move to transfer venue of this case to the United States District Court for the Central District of California.  Plaintiff opposes both motions and moves for leave to amend her first amended complaint.  Defendants have filed a statement of non-opposition to Plaintiff's motion to

amend. The motions were heard on April 21, 2006. Having considered all of the papers filed by the parties and oral argument on the motions, the Court denies without prejudice Defendants' motion to transfer venue and grants Defendants' motion to stay litigation and to compel arbitration. Plaintiff's motion to amend is granted.

BACKGROUND

Plaintiff began working for Defendant ACS Education Services on December 2, 2002. Defendant ACS Education Services processes student college loans and has been doing so for over twenty years. Previously it was known as Academic Financial Services Association. Its name was changed to ACS Education Services when Defendant ACS acquired it in 2002. Both Defendant ACS and its subsidiary Defendant ACS Education Services are Delaware corporations with their principal places of business in Texas.

Plaintiff worked in Long Beach, California, processing student loans. Her supervisor, Elva Correa, and her manager, Trena Alvarado, also worked in Long Beach. They supervised only employees in Long Beach. Plaintiff's entire department was located at Defendant ACS Education Services' Long Beach office. According to Defendants, human resource matters for employees in Long Beach are handled in the Long Beach office and the administration of breaks and meal times is the responsibility of front-line supervision. Defendant ACS Education Services has a single employee in Northern California.

A week after Plaintiff was hired, she signed an Acceptance of, and Agreement to, ACS' Dispute Resolution Plan. That one-page

2

document states in part:

> I recognize that ACS has adopted a Dispute Resolution Plan ("DRP") effective April 13, 2002 as the exclusive remedy for resolving the vast majority of workplace concerns and disputes.  I understand and agree that the DRP will be the exclusive means for resolving any dispute or claim concerning my application for employment or the terms and conditions of my employment with Affiliated Computer Services.  I understand that ACS' consideration of my employment and any offer of employment that may be made to me are contingent on my acceptance of the DRP as the exclusive means for resolving all disputes covered under the DRP . . . .  I understand that by signing this document, I am waiving any right I might otherwise have to have a jury or judge resolve any claim I might have against Affiliated Computer Services.

Plaintiff states that she does not remember seeing or receiving a copy of the Dispute Resolution Plan and Rules.

In April, 2005, Plaintiff gave notice to terminate her employment.  She alleges that Defendant ACS Education Services fired her before her notice period had expired and that her last day of work was on April 21, 2005.  On or about May 5, 2005, Plaintiff received a check from Defendant ACS Education Services.  Five days later, her final salary payment was deposited directly in her bank account.

Following her termination, Plaintiff filed a complaint with the California Labor Commission, Division of Labor Standards Enforcement, in Long Beach, California.  On October 6, 2005, a State Labor Commissioner found that Plaintiff was paid all of her wages, and, in fact, was over-paid.  Finding her claims for unpaid wages without merit, the Commissioner closed her file.

In January, 2006, Plaintiff, who now lives in Phoenix, Arizona, filed this action in the Northern District of California. Plaintiff seeks to recover wages, penalty wages, punitive damages,

3

liquidated damages and civil penalties for all present and former employees of Defendants based on Defendants' failure to provide breaks and pay wages.  Specifically, Plaintiff alleges ten causes of action: (1) failure to provide rest periods in violation of Cal. Labor Code §§ 226.7 and 516; (2) failure to provide meal periods in violation of Cal. Labor Code §§ 226.7, 512 and 516; (3) failure to pay wages in violation of Cal. Labor Code §§ 201, 202 and 218; (4) late payment of wages in violation of Cal. Labor Code §§ 201, 202 and 203; (5) failure to pay minimum wage in violation of Cal. Labor Code §§ 512, 1194, 1194.2 and 1197; (6) failure to pay overtime in violation of Cal. Labor Code §§ 510, 512 and 1194; (7) breach of contract; (8) conversion of wages; (9) quantum meruit; and (10) unfair competition in violation of Cal. Business and Professions Code § 17200.[1]

## DISCUSSION

I.  Defendants' Motion to Compel Arbitration

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., written agreements that controversies between parties shall be settled by arbitration are "valid, irrevocable, and enforceable, save on such grounds as exist in law or at equity for revocation of any contract."  9 U.S.C. § 2.  A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the district court in which an action has been commenced for an order directing that arbitration proceed as provided for in

---

[1] As discussed below, Plaintiff seeks leave to amend her complaint to add an eleventh claim for relief under the Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698.

4

the agreement. 9 U.S.C. § 4. If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id.

Defendants request that the Court order Plaintiff to proceed with arbitration in accordance with the terms of the DRP. According to Defendants, Plaintiff signed the Acceptance of, and Agreement to, ACS' Dispute Resolution Plan, and thus should be compelled to comply with her contractual obligation to arbitrate her dispute with Defendants. Plaintiff disagrees. She argues that she did not enter into a contract to arbitrate with Defendants and that, even if she did, the DRP is unenforceable.

A.  Contract

Plaintiff notes that, under California law, "there is no contract until there has been a meeting of the minds on all material points." Banner Entertainment, Inc. v. Superior Ct., 62 Cal. App. 4th 348, 358 (1998) (emphasis in original). Plaintiff contends that, because she never saw the DRP, she could not have assented to its terms and thus there was no meeting of the minds on the material points of the DRP. Plaintiff claims that when she signed Defendants' form she was only agreeing to resolve disputes with Defendants while she was employed by Defendants.

The Acceptance of, and Agreement to, ACS' Dispute Resolution Plan explicitly discusses the DRP and provides basic information regarding the DRP. It makes clear that the "arbitration proceedings under the DRP shall be conducted by the American

5

Arbitration Association or Judicial Arbitration and Mediations Services under ACS' Dispute Resolution Plan & Rules as published and in effect at the time a demand for arbitration is made." By signing the form, Plaintiff agreed to arbitrate claims between herself and Defendants. As Defendants note, a party is presumed to have read the contract she signed. Randas v. YMCA of Metropolitan Los Angeles, 17 Cal. App. 4th 158, 163 (1993); Hulsey v. Elsinore Parachute Center, 168 Cal. App. 3d 333, 339 (1985) ("It is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it."). The Acceptance of, and Agreement to, ACS' Dispute Resolution Plan is not unenforceable merely because Plaintiff allegedly did not see the DRP and its rules. See Spellman v. Sec., Annuities & Ins. Servs., Inc., 8 Cal. App. 4th 452, 458 (1992) (enforcing arbitration agreement where employment contract "clearly referred to and identified the incorporated document wherein the arbitration clause appeared").

B.  Unconscionability of the Arbitration Agreement

Plaintiff also contends that the arbitration agreement is unconscionable and thus unenforceable. In determining whether an agreement to arbitrate is valid, federal courts must "apply ordinary state-law principles that govern the formation of contracts." Circuit City Stores v. Adams, 279 F.3d 889, 892 (9th Cir. 2002)(quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). "General contract defenses such as fraud, duress or unconscionability, grounded in state contract law, may

6

operate to invalidate arbitration agreements." Id. (citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)); see also Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931 (9th Cir. 2001) (applying Montana contract law to determine validity of arbitration agreement). "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract . . ." Cal. Civ. Code § 1670.5(a).

In California, "unconscionability has both a procedural and a substantive element, the former focusing on undue oppression or surprise due to unequal bargaining power, the latter on overly-harsh or one-sided results." Armendariz v. Foundation Health Psychcare Servs., Inc., 24 Cal.4th 83, 114 (2000) (internal quotation marks omitted); see also Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003) ("Unconscionability refers to 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'") (quoting A & M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486 (1982)). To invalidate a contract on grounds of unconscionability, both procedural and substantive unconscionability must be present, although not necessarily to the same degree: "the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id.

7

1. Procedural Unconscionability

A contract or clause is procedurally unconscionable if it is a contract of adhesion. Adams, 279 F.3d at 893; see also Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 853 (2001) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability."). A contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Armendariz, 24 Cal. 4th at 113 (quoting Neal v. State Farm Ins. Co., 188 Cal. App. 2d 690, 694 (1961)).

In Armendariz, the California Supreme Court found an arbitration contract to be procedurally unconscionable because "[i]t was imposed on employees as a condition of employment and there was no opportunity to negotiate." 24 Cal. 4th at 114-15. The court explained that "the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." Id.

Like the arbitration contract found to be procedurally unconscionable in Adams and Ingle I, the DRP was drafted by Defendants, who do not deny that they use it as their standard arbitration agreement for all of their new employees. Signing the DRP is a prerequisite to employment, and "job applicants are not permitted to modify the agreement's terms -- they must take the

8

contract or leave it."  Adams, 279 F.3d at 893.

Although there is no dispute that the DRP is adhesive, Defendants, relying upon EEOC v. Luce Forward, Hamilton & Scripps, 345 F.3d 742 (9th Cir. 2003), argued that the DRP is not procedurally unconscionable.  The Ninth Circuit has rejected this argument.  In Ingle v. Circuit City, 408 F.3d 592, 595 (9th Cir. 2005) (Ingle II), the court found that the defendant's argument on appeal that Luce Forward undermined its decision in Ingle I was "wholly without merit" and imposed sanctions.  Pointing to Al-Safin v. Circuit City Stores, Inc., 394 F.3d 1254 (9th Cir. 2005), the court explained that, post-Luce Forward, it continues to examine compulsory agreements and to hold that certain agreements are unconscionable, and hence unenforceable, as a matter of State law. 408 F.3d at 595.  Defendants did not address procedural unconscionability, or Luce Forward, in their reply, and at the hearing conceded that the DRP is procedurally unconscionable.

Like the arbitration agreements in Adams and Ingle I, Defendants presented the DRP to Plaintiff on an adhere-or-reject basis; the DRP is a contract of adhesion and procedurally unconscionable.

        2.  Substantive Unconscionability

Substantive unconscionability focuses on the harshness and one-sided nature of the substantive terms of the contract.  A & M Produce, 135 Cal. App. 3d at 486-87.  The Ninth Circuit instructs that,

> under California law, a contract to arbitrate between an employer and an employee, such as the one we evaluate in this case, raises a rebuttable presumption of

9

> substantive unconscionability. Unless the employer can demonstrate that the effect of a contract to arbitrate is bilateral -- as is required under California law -- with respect to a particular employee, courts should presume such contracts substantively unconscionable.

Ingle I, 328 F.3d at 1174. Whether an arbitration agreement is sufficiently bilateral is determined by examining the actual effects of the challenged provisions. Ellis v. McKinnon Broad. Co., 18 Cal. App. 4th 1796, 1803-04 (1993).

Defendants contend that the DRP is bilateral. They note that Defendants and Plaintiff would jointly participate in the selection of a neutral arbitrator. DRP at 9. A list of qualified arbitrators is sent to the employee and Defendants, and each party has two weeks to review the list, to strike any names it objects to and to number the names in order of preference; an arbitrator then is selected based on the order of mutual preference. Id. All parties have the right to strike one list in its entirety. Id. The DRP provides for a written award and judicial review. As Defendants correctly note, the DRP, unlike arbitration agreements struck down by courts, does not limit the damages that can be awarded, does not impose a shortened statute of limitations, does not reserve the right to a judicial forum for disputes initiated by the employer, and does not require the employee to share equally the costs of arbitration.

Plaintiff, however, challenges various terms of the DRP, arguing that those terms are substantively unconscionable and render the entire arbitration agreement unenforceable.

10

1.  Modification and Termination

The DRP provides that it may be amended by Defendant ACS "at any time by giving at least ten days notice" to current employees and that its rules may be amended "at any time by serving notice of the amendments on AAA or JAMS." Defendant ACS can terminate the DRP "at any time by giving at least 10 days notice of termination to current Employees." The power to amend or terminate the DRP is reserved solely for Defendant ACS; employees do not have that power.

Plaintiff notes that the Ninth Circuit has held that a provision affording an employer the unilateral power to modify or terminate the contract is substantively unconscionable. Ingle I, 328 F.3d at 1179. Defendants respond by noting that they have never changed or amended the DRP since its inception in 2002. Defendants further note that, unlike the arbitration agreement at issue in Ingle I, here, the DRP prohibits any amendments to, or termination of, the DRP while a dispute is pending. Specifically, the DRP states that no amendment to the Plan or Rules "shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules" and that "termination shall not be effective as to Disputes for which a proceeding has been initiated pursuant to the Rules prior to the date of termination." Defendants acknowledge that they cannot modify or terminate the DRP with respect to Plaintiff's claims. Examining the actual effects of the modification and termination provisions, the Court finds that they are not substantively unconscionable.

11

### 2. Claims subject to Arbitration

Plaintiff further argues that the DRP is substantively unconscionable because it requires arbitration only of claims brought by employees. Defendants deny that the DRP is one-sided; they contend that, like employees, they too are bound to arbitrate all employment-related disputes with employees. Defendants point to the DRP's definition of "Dispute," which is broad, unlike that in <u>Ingle I</u>, where the arbitration agreement expressly limited its scope to claims brought by employee. 328 F.3d at 1174-75. And the DRP provides, "Until revoked by the Sponsor pursuant to this Plan, this Plan applies to and binds the Company."

Plaintiff argues that, as in <u>Ingle I</u>, the legal claims the arbitration agreement lists as examples are virtually all claims that employees would assert against their employer. <u>See id</u>. at 1174 n.8. Plaintiff also notes that, as explained in the Rules, an employee or applicant must initiate the arbitration by filing a written request with Defendants, but the Rules do not explain how Defendants would initiate arbitration. Nonetheless, as noted above, the definition of "dispute" is broad, covering "all legal and equitable claims, demands, and controversies of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound" by the DRP. Defendants are bound by the Plan. Because the agreement does not lack the requisite modicum of bilaterality with regard to claims covered, the Court finds that the coverage of the arbitration agreement is not substantively unconscionable.

12

### 3. Confidentiality

The DRP contains a confidentiality provision. Plaintiff notes that, in Ting v. AT&T, 319 F.3d 1126 (9th Cir. 2003), the court held that the district court did not err in finding a confidentiality provision unconscionable. Defendants point out that the arbitration agreement at issue in Ting required that an arbitration remain confidential, whereas, here, the DRP requires that those administering the DRP maintain confidentiality. The DRP does not prevent employees from disclosing the facts, circumstances or results of arbitration. Thus, the Court finds that the confidentiality provision is not substantively unconscionable.

### 4. Class Treatment

Plaintiff argues that the DRP effectively bans class proceedings. In Ingle I, a ban on class-wide arbitration was found to be substantively unconscionable. 328 F.3d at 1176. Defendants note, however, that in Ingle I the agreement itself directed arbitrators not to consolidate claims of different employees in one proceeding. Here, as Plaintiff concedes, there is no express provision banning class proceedings. At the hearing, counsel for Defendants affirmed that, under the DRP, Plaintiff can bring a class action in arbitration. Thus, the lack of a provision expressly allowing class proceedings does not make the DRP substantively unconscionable.

### 5. Plaintiff's Costs

Plaintiff argues that the arbitration agreement seeks to impose fees on her that she would not have to pay if this case remained in court. As explained in Ingle I, "when an employer

13

imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." 328 F.3d at 1177 (quoting Armendariz, 24 Cal.4th at 110-11). The court in Ingle I found the filing fee in the arbitration agreement substantively unconscionable, in part because it did not provide for a waiver in the case of indigence. Defendants note that the DRP provides for a waiver of the one-hundred dollar filing fee.

Plaintiff, however, points to costs other than the filing fee. She argues that the DRP provides that there will be no record of the proceedings unless requested by a party or the arbitrator and that the party requesting the record shall bear the entire cost of producing it. According to Plaintiff, if she were in court she would not be forced to pay for the entire cost of the record or forego having the record; a court reporter would be present regardless of whether she planned to purchase a copy of the transcript of the proceedings. Plaintiff also notes that the DRP requires that the cost of discovery be borne by the party initiating discovery. Plaintiff claims that the employee's cost of discovery is potentially much higher than that of the employer and that the employee's ability to conduct discovery could be precluded altogether by cost.

Defendants respond that the DRP is consistent with the practice under the Federal Rules of Civil Procedure, where the party noticing a deposition bears the cost of the court reporter

14

and the party requesting production bears the cost of photocopying. The cost provisions of the DRP are not as oppressive as other arbitration agreements, which require an employee to split the cost of arbitration with her employer, that courts have found substantively unconscionable. The DRP does not require an employee to bear costs that she would not incur if she were free to bring the action in court. Thus, the cost provisions of the DRP are not substantively unconscionable.

C. Conclusion

The Court finds that, under California law, the arbitration agreement is procedurally unconscionable, but not substantively unconscionable. Thus, the agreement will be enforced and Defendants' motion to stay this litigation and compel arbitration is granted.

II. Defendants' Motion to Transfer

Because the Court has stayed this suit pending arbitration, Defendants' motion to transfer is denied without prejudice. If, for any reason, this case must be decided on its merits in District Court, the Court will entertain the motion to transfer, which appears to be meritorious.

III. Plaintiff's Motion to Amend Complaint

Plaintiff seeks leave to amend her first amended complaint. Specifically, Plaintiff seeks to add an additional claim under the Labor Code Private Attorney Generals Act of 2004. Defendants filed a statement of non-opposition to Plaintiff's motion to amend. The Court grants Plaintiff's motion to amend her first amended complaint.

15

CONCLUSION

For the foregoing reasons, Defendants' Motion to Stay Litigation and Compel Arbitration (Docket No. 13) is GRANTED; Defendants' Motion to Change Venue to the United States District Court for the Central District of California (Docket No. 14) is DENIED without prejudice. Plaintiff's Motion for an Order Granting Leave to Amend Plaintiff's Complaint (Docket No. 19) is GRANTED, and Plaintiff shall file her amended complaint forthwith. Plaintiff is ordered to proceed with arbitration in accordance with the terms of the DRP. This case shall be stayed, pending arbitration, which shall proceed expeditiously. A case management conference will be held on October 27, 2006 at 1:30 p.m. If the arbitrator's award is made before the case management conference, the parties shall notify the Court.

IT IS SO ORDERED.

Dated: 5/15/06

CLAUDIA WILKEN
United States District Judge